



*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re | Case No. 08-20111-E-13L |
| RICHARD L. BRADDOCK and PATRICIA L. BRADDOCK, | |
| Debtor(s). | |

| | |
|---|---|
| RICHARD L. BRADDOCK and PATRICIA L. BRADDOCK, | Adv. Pro. No. 10-2437<br>Docket Control No. PD-1 |
| Plaintiff(s),<br>v. | |
| FREEMONT INVESTMENT AND LOAN, CORP.,; CARRINGTON MORTGAGE SERVICES, LLC; and MERS, | |
| Defendant(s). | |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM DECISION AND ORDER

Before the court is Carrington Mortgage Services, LLC's motion for summary judgement on the second (violation of 11 U.S.C. § 362(a)), third (violation of 11 U.S.C. § 362(k)), fourth (violation of 12 U.S.C. § 2605(a) (RESPA)), and fifth (civil conspiracy) causes of action asserted in the complaint filed by Richard Braddock and Patricia Braddock ("Plaintiff-Debtors")

(Dckt. 1).  The court concludes that there are no genuine disputes of material facts and grants summary judgment for Defendants on the second, third, and fifth causes of action.  Pursuant to the Motion, the court makes specific findings of material facts not in genuine dispute for the remaining causes of action which are established for all purposes in this case as provided in Fed. R. Civ. P. 56(g) and Fed. R. Bankr. P. 7056.

The requests for judicial notice[1] are granted with exception to the request to judicially notice the Chapter 13 Trustee's payment history.  *Cf. M/V American Queen v. San Diego Marine Constr.*, 708 F.2d 1483, 1491 (9th Cir. 1983), noting that a court may not take judicial notice of otherwise inadmissible statements merely because they are part of a court record or file.

## BACKGROUND

In June 2005, the Plaintiff-Debtors obtained a loan from Fremont Investment and Loan which was secured by a first position trust deed recorded against the real property commonly known as 4213 North County Drive, Antelope, California.[2]  Subsequently, the Plaintiff-Debtors and Fremont entered into a pre-petition loan modification agreement converting the loan from an adjustable-rate mortgage to a fixed-rate mortgage setting the principal and interest payment at $1,656.13.

The Plaintiff-Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code on January 3, 2008.  The original

---

[1]/ References to requests for judicial notice by Carrington are designed "CMS Req. J.N."

[2]/ Fremont Investment and Loan is a defendant in this adversary proceeding but is not a party to this motion.

2

Chapter 13 Plan filed by the Plaintiff-Debtors on January 3, 2008, provided for ongoing monthly post-petition mortgage payments of $1,656.13 and additional monthly payments to cure a pre-petition arrearage of $11,600.00. This treatment provided for the repayment of an advance for property taxes through monthly plan payments rather than an increase in post-petition mortgage payments as otherwise permitted under RESPA. Ex. B to CMS's Req. for J.N., Dckt. 36. Fremont filed a Proof of Claim that listed pre-petition arrears in the amount of $2,126.82, which did not include pre-petition arrearages for escrow advances. Ex. C to CMS's Req. for J.N., Dckt. 36.

On April 1, 2008, after the commencement of the bankruptcy case, Carrington acquired the servicing rights for the First Loan from Fremont ("Fremont First Note"). Decl. of Mike Ruiz 2:24-25, Dckt. 34. Carrington offers evidence that it provided the Plaintiff-Debtors with a notice of service transfer of the First Loan by letter dated April 1, 2008. Decl. of Mike Ruiz, 2:26-3:3; Ex. D to Decl. of Mike Ruiz, Dckt. 38. Carrington also filed a Notice of Transfer of Claim Other Than for Security in the bankruptcy case. Decl. of Mike Ruiz 3:4-5. The Plaintiff-Debtors offer no evidence to oppose the Ruiz Declaration on this point.

The Sacramento County Tax Collector filed a Proof of Claim in the amount of $3,932.86 for "2008 Estimate" property taxes. Ex. E to CMS Req. for J.N., Dckt. 36. The Plaintiff-Debtors allege that the Tax Collector received a payment of $2,643.50 in July 2009 and refunded $332.52 to the Chapter 13 Trustee, though no evidence in

support of this contention is offered.[3]

At the time servicing was transferred, the account for the Fremont First Note reflected a negative escrow balance of $12,106.11. Decl. of Mike Ruiz 3:6-7. Carrington received monthly post-petition payments in the amount of $1,656.13 from the Chapter 13 Trustee from February 28, 2008, through November 30, 2009. *Id.* at 3:7-9. These payments were received from the Chapter 13 Trustee and were applied to the First Loan. *Id.* at 3:9-10.

Plaintiff-Debtors' First Modified Chapter 13 Plan listed two claims in Section 3.09 (Class 1 Claims) to be paid to Fremont/Carrington. Ex. F to CMS Req. for J.N., Dckt. 36. The first claim proposed to pay Fremont/Carrington monthly post-petition payments of $1,656.13 and cure a pre-petition arrearage in the amount of $2,126.82. *Id.* The second claim proposed to cure a pre-petition arrearage in the amount of $8,051.42. *Id.* Section 3.11 of the First Amended Plan (Class 2 Claims) also provided for payment of the 2008 Property Taxes in the amount of $3,932.86. *Id.*

On October 24, 2008, the Plaintiff-Debtors filed a Proof of Claim on Carrington's behalf in the amount of $8,051.42. Ex. H to CMS Req. for J.N., Dckt. 36. Although this proof of claim indicates that it was for mortgage arrears, it fails to indicate

-------------------

[3]/ The Plaintiff-Debtors cite to "Plaintiffs' Request for Judicial Notice." None of the exhibits attached to the request for judicial notice establish this fact. To the extent Plaintiff-Debtors rely upon the Trustee's record of payments in this case, that record has not been properly authenticated. *Cf. In re Scarpinito*, 196 B.R. 257, 267 (E.D.N.Y. 1996), "We may not infer the truth of the facts contained in documents, unfettered by rules of evidence or logic, simply because such documents were filed with the court."; *M/V American Queen*, 708 F.2d at 1491.

the account number or other identifier of the debt. *Id.*[4]   In November 2008, the Chapter 13 Trustee began disbursing payments to Carrington pursuant to this proof of claim and Carrington applied the payments to the Plaintiff-Debtors' second priority loan with Carrington.[5]

In October 2009, eighteen months after it began to service the loan and twenty-one months after the current Chapter 13 case was commenced by the Plaintiff-Debtors, Carrington conducted an escrow analysis of the first loan and generated an Annual Escrow Account Disclosure Statement-Last Cycle Account History. Decl. of Mike Ruiz 3:21-23.   The History Statement included a statement that "[t]his statement is informational only and requires no action on your part." *Id.* at 3:23-24.   Carrington also generated an Annual Escrow Account Disclosure Statement-Projections. *Id.* at 4:1-2.   The Projections Statement stated that "[t]his statement tells you of any changes in your mortgage payment." *Id.* at 4:2-3.   The escrow analysis resulted in increased monthly payments from $1,656.13 to $1,904.66. Ex. F to Decl. of Mike Ruiz, Dckt. 38.   From December 31, 2009, through June 30, 2010, Carrington received monthly post-petition payments in the amount of $1,904.66 from the Chapter 13 Trustee.   All these payments received from the

---

[4]/ Complicating this situation is that there were two loans obtained by the Plaintiff-Debtors with Fremont Financial, one secured by a first deed of trust and the second secured by a second deed of trust.   There appears to be no dispute that the $8,051.42 proof of claim was intended by the Plaintiff-Debtors for the amount which they assert relates to the pre-petition advance for taxes made by Fremont.

[5]/ The court granted a motion valuing the claim secured by the second trust deed on May 6, 2008.   The value of this secured claim was determined to be $0.00.

Chapter 13 Trustee were applied to Plaintiff-Debtors' First Loan. Decl. of Mike Ruiz 4:7-9.

On July 10, 2010, Plaintiff-Debtors filed their Second Modified Chapter 13 Plan which included two claims in Section 3.09 to be paid to Carrington. Ex. J to CMS Req. for J.N., Dckt. 36. The first claim proposed to pay Carrington monthly post-petition mortgage payments of $1,656.13 and cure pre-petition arrears in the amount of $2,126.82. *Id.* The second claim proposed to cure pre-petition arrears in the amount of $4,252.09. *Id.* With respect to the second claim, the Second Amended Plan states that "per debtor poc incorrect." *Id.*

## REVIEW OF THE COMPLAINT

Plaintiff-Debtors filed this adversary proceeding on July 15, 2010 (Dckt. 1). The complaint seeks (1) declaratory relief as to the rights and obligations of the respective parties to this adversary proceeding, including a statement of the amount of contractual payments due, an accounting, and a detailed analysis of pre-petition and post-petition escrow shortages (Dckt. 1 at 9); (2) Money damages for violation of the automatic stay of 11 U.S.C. § 362(a) (Dckt. 1 at 10); (3) Money damages for violation of the automatic stay pursuant to 11 U.S.C. § 362(k)(1) (Dckt. 1 at 11-12); (4) Money damages for violation of the RESPA; and (5) Money Damages for civil conspiracy (Dckt. 1 at 14-16).

In considering a motion to dismiss, it is necessary to identify what has been actually alleged by the Plaintiff-Debtors and against whom. Starting with the causes of action and working outward to the general allegations is appropriate in this Adversary Proceeding.

**First Cause of Action**

The First Cause of Action is for declaratory relief against the "Defendants" collectively.  No specific person or persons are identified as having a dispute with the Plaintiff-Debtors.  It is alleged that there is a dispute concerning the amount of the post-petition monthly payments to be made by the Plaintiff-Debtors on the Fremont First Note.  Specifically, it is alleged that a dispute exists concerning the computation of amounts properly included for escrow advances made by the creditor pre-petition and post-petition.

The general allegations in the Complaint allege that Fremont Investment and Loan filed a proof of claim in the Plaintiff-Debtors' bankruptcy case in which it stated a pre-petition arrearage of $2,126.82.  Complaint ¶24.  It is then further asserted that an unnamed defendant filed an Assignment and Transfer of the Fremont claim stating that the claim had been assigned to Carrington.  Complaint ¶28.  Plaintiff-Debtors then assert that Carrington generated a post-petition escrow account disclosure statement which increased the post-petition payments on the Fremont First Note. Further, an unnamed defendant or defendants conducted an escrow analysis pursuant to RESPA which did not distinguish between pre and post-petition arrearage amounts in conducting a post-petition RESPA escrow analysis and notified the Chapter 13 Trustee of the improperly computed increase in the monthly payment on the Fremont First Note.  Then, upon receipt of the notice of the improperly computed increase in the monthly post-petition payment, the Chapter 13 Trustee notified Plaintiff-Debtors' attorney of the increase in the monthly payment due the Trustee.  Complaint ¶¶35,

43, 44, 46, 47.

The only named defendant who appears to be the subject of these allegations to determine the correct amount of the post-petition monthly payments on the Fremont First Note is Carrington. This is consistent with Carrington having filed a Notice of Assignment of the proof of claim originally filed by Fremont Investment and Loan.

**Second and Third Causes of Action**

It is alleged that unnamed defendants had knowledge of the bankruptcy and automatic stay. It is contended that unnamed defendants conducted a post-petition escrow analysis for the obligation owed by the Plaintiff-Debtors on the Fremont First Note. Complaint ¶¶57, 59. The unnamed defendants conducted the analysis so as to include the pre-petition arrearage and thereby increased the post-petition monthly payments to include repayment of the pre-petition arrearage which was otherwise provided for in the Chapter 13 Plan. Complaint ¶¶43,50. Plaintiff-Debtors assert that unnamed defendants gave notice of a post-petition monthly payment increase to the Chapter 13 Trustee for the purpose of obtaining payment of the pre-petition arrearage through post-petition monthly mortgage payments from the Plaintiff-Debtors. Complaint ¶¶44, 55. It is further alleged that this conduct was done intentionally, violates the automatic stay, and that the Plaintiff-Debtors have suffered damages identified as the post-petition payment of pre-petition property taxes, improper forced place insurance, an improperly increased mortgage payment, attorneys' fees, and nonspecific emotional distress. Complaint ¶¶63, 66, 67, 70, 71, 72, 73, 74, 75.

8

Considering the general allegations in the Complaint, the only person identified as having engaged in any of the alleged improper conduct is Carrington.

## Fourth Cause of Action

The Plaintiff-Debtors assert that the Fremont First Note is part of a loan transaction subject to RESPA. Upon an assignment, sale, transfer, or change in servicer for the Fremont Note, notice was to be given to Plaintiff-Debtors. It is asserted that unnamed defendants were to provide the notice not less than 15 days before the transfer of the loan. Complaint ¶¶79, 80, 81. It is alleged that this notice was not given by unnamed defendants. Complaint ¶¶82, 83, 84. Therefore, Plaintiff-Debtors assert that unnamed defendants have violated RESPA. From a review of the Complaint, the only unnamed "defendants" who failed to provide the notice is alleged to have been Carrington or Fremont Investment and Loan, Corp., the latter of whom is not the subject of the present motion.

## Fifth Cause of Action

The Plaintiff-Debtors allege that unnamed defendants engaged in conduct to recoup pre-petition claims (the pre-petition arreage) from post-petition property of the bankruptcy estate (through increased post-petition monthly payments on the Fremont First Note). Complaint ¶88. It is contended that unnamed defendants conspired to do this, and gave notice of the post-petition monthly payment increase (including payment of the pre-petition arrearage) knowing that the Chapter 13 Trustee would collect the increase monthly payment from the Plaintiff-Debtors. Complaint ¶89. In unstated ways, it is alleged that the unnamed defendants assisted unnamed assignees and/or successors of unidentified instruments in

concealing the collection of unspecified pre-petition arrearage through increased unidentified post-petition payments.  An unnamed defendant is alleged to know the source of the decision making and has a duty to counsel the various unnamed defendants as to the automatic stay provisions.  Complaint ¶¶90, 91, 93, 94.

The specific conduct of Carrington at issue is alleged in the First Amended Complaint to be the following: Carrington, as part of its policies and practices, conducted a post-petition escrow analysis which failed to distinguish between pre-petition and post-petition escrow advances.  Carrington then generated an increased post-petition mortgage payment amount, which included collection of pre-petition escrow advances, and on November 1, 2009 notified the Chapter 13 Trustee that the post-petition mortgage payments increased from $1,656.13 to $1,904.66.

## UNDISPUTED FACTS

In this case there are no disputed facts, with the only dispute being the legal conclusions drawn from the facts.  The court has constructed a chart of the facts to which both parties agree and have asserted common source evidence (center column), and the facts for which evidence was introduced by one party without conflicting evidenced offered by the other party (left column introduced by Carrington and right column introduced by Plaintiff-Debtors).

| Carrington Uncontradicted Evidence | Common Cited Evidence | Plaintiff-Debtors Uncontradicted Evidence |
|---|---|---|
|  | June 21, 2005 Plaintiff-Debtors Executed Note in favor of Fremont Investment & Loan. Michael Ruiz Declaration, ¶4. |  |

10

| Carrington Uncontradicted Evidence | Common Cited Evidence | Plaintiff-Debtors Uncontradicted Evidence |
|---|---|---|
| | The Fremont Note is secured by a Deed of Trust encumbering real property commonly known as 4231 North County Drive, Antelope, California.  Michael Ruiz Declaration, ¶5. | |
| | August 1, 2007, Plaintiff-Debtors modified the Fremont Note to provide for monthly payments of $1,656.13. Michael Ruiz Declaration, ¶6. | |
| | January 3, 2008, Plaintiff-Debtors filed bankruptcy case no. 08-20111.  Petition, Dckt. 1. | |
| | | January 10, 2008 Fremont was served with Notice of the Bankruptcy Case.  Case No. 08-20111, Dckt. 10. |
| | | Plaintiff-Debtors Chapter 13 Plan provided for $1,656.13 post-petition payments and payments to cure pre-petition arrearage of $11,600.00.  Michael Ruiz Declaration, ¶10. Chapter 13 Plan, case no. 08-20111, Dckt. 53. |
| | On February 27, 2008 Fremont Investment filed a proof of claim listing $2,126.82 pre-petition arrearage.  Case No.08-20111, Proof of Claim No. 9, Claims Registry. | |

| Carrington Uncontradicted Evidence | Common Cited Evidence | Plaintiff-Debtors Uncontradicted Evidence |
|---|---|---|
| | | The proof of claim did not list $12,105.11 in pre-petition advances made by Fremont for property taxes. Michael Ruiz Declaration ¶17.  Proof of Claim no 9, Official Registry of Claims for case no. 08-20111, filed by Fremont Investment. |
| | April 1, 2008 Carrington acquired the servicing rights for the Fremont First Note.  Michael Ruiz Declaration, ¶7. | |
| At the time of the April 1, 2008 service transfer to Carrington, there was a $12,106.11 negative escrow balance on the Fremont First Note.  Michael Ruiz Declaration, ¶10. | | |
| The notice of transfer of servicing rights to Carrington required to be given the Plaintiff-Debtors pursuant to RESPA is the Transfer of Claim Other Than Security dated May 2, 2011, and executed under penalty of perjury by William Malcolm as the Transferee/Transferee's Agent.  Michael Ruiz Declaration, ¶8.  Exhibit D., Dckt.  36. | | |
| | May 2, 2008 Carrington filed a notice of transfer of Claim with the bankruptcy court. Michael Ruiz Declaration, ¶9. | |

12

| Carrington Uncontradicted Evidence | Common Cited Evidence | Plaintiff-Debtors Uncontradicted Evidence |
|---|---|---|
| | May 5, 2008 the Sacramento County Tax Collector filed a proof of claim in the amount of $3,932.86 for 2008 estimated property taxes. Case No.08-20111, Proof of Claim No. 22, Claims Registry. | |
| | May 9, 2008 Plaintiff-Debtors' First Amended Chapter 13 Plan was confirmed. Case No. 08-20111, Dckt. 101. | |
| The Chapter 13 Trustee disbursed monthly payments of $1,656.13 to Carrington during the period February 28, 2008 through November 30, 2009. Michael Ruiz Declaration, ¶10. | | |
| September 16, 2008 Plaintiff-Debtors filed a First Modified Chapter 13 Plan listing two Class 1 secured claims for Carrington. The first claim provides for a monthly contract installment of $1,656.13 and a monthly distribution of $25.00 on a pre-petition arrearage of $2,126.82. The second Carrington claim is for an $8,051.42 arrearage to be paid with a monthly distribution of $153.00. Exhibit F, Dckt 36. Case No. 08-20111 Dckt. 121. | | |

13

| Carrington Uncontradicted Evidence | Common Cited Evidence | Plaintiff-Debtors Uncontradicted Evidence |
|---|---|---|
| | November 28, 2008 Carrington began applying some payments from the Chapter 13 Trustee to the Fremont Second Note secured by a second trust deed.  Michael Ruiz Declaration, ¶12. | |
| | October 9, 2009 Carrington generated Annual Escrow Account Disclosure Statement - Projections.  Michael Ruiz  Declaration, ¶13. | |
| | The October 9, 2009 Disclosure Statement-Projections provided notice that the post-petition mortgage payments increasing from $1,656.13 to $1,904.66. Michael Ruiz Declaration, ¶14. | |
| | The October 9, 2009 Disclosure Statement - Projections state "this statement tells you of any changes in your mortgage payment." Michael Ruiz Declaration, ¶14. | |
| | During the period from December 31, 2009 through June 20, 2010, Carrington received monthly payments from the Chapter 13 Trustee in the amount of $1,904.66.  This increased payment was the amount stated in the Annual Escrow Account Disclosure Statement which it sent to the Chapter 13 Trustee and the Plaintiff-Debtors. Michael Ruiz Declaration, ¶15. | |

14

| Carrington Uncontradicted Evidence | Common Cited Evidence | Plaintiff-Debtors Uncontradicted Evidence |
|---|---|---|
| | | Additional payments made by the Chapter 13 Trustee for the pre-petition arrearage based on the proof of claim filed by the Plaintiff-Debtors for Carrington were misapplied to Fremont Second Note.    Michael Ruiz Declaration, ¶12. |
| | On January 7, 2010 Plaintiff-Debtors sent Carrington a Qualified Written Request under RESPA.  Michael Ruiz Declaration, ¶16. | |
| | On July 13, 2010, Carrington responded to the Plaintiff-Debtors' January 7, 2011, Qualified Written Request, advising Plaintiff-Debtors that any payments misapplied to Fremont Second Note had been re-applied to Fremont First Note. Michael Ruiz Declaration, ¶18. | |

The Plaintiff-Debtors offer two declarations, in addition to the evidenced provided by Carrington.  The first is the declaration of Peter Macaluso, the attorney for Plaintiff-Debtors.  He testifies that the Plaintiff-Debtors have filed a Chapter 13 Plan and that he has 8.0 hours of time working on the Chapter 13 Plans in the bankruptcy case and 12.0 hours of time working on this Adversary Proceeding.

The second declaration is that of the Plaintiff-Debtors. Mr. and Mrs. Braddock jointly testify that "I have been diagnosed

and am being treated for depression." Further, that "I have fallen and had to have surgery to replace my hip," and "I have experienced anxiety, fright, grief, and humiliation by reason of the increase in post petition payment advances made to the Trustee, and the difficulty in confirming Plans." The Plaintiff-Debtors further collectively testify that "This has not helped me recover from my illness as I fear that I will not have a home to recoup in," and "Carrington applied the funds received from the Trustee to the second deed of trust instead of the first mortgage and has not returned the funds to us."

Carrington has provided the court with a declaration from Michael Ruiz, who identifies himself as a "Bankruptcy Specialist" at Carrington. Mr. Ruiz states that, as an employee of Carrington, he will "monitor and review loans serviced by Carrington." As part of his duties he has access to the books and records of Carrington and makes the declaration based on his review of the books and records, as well as his personal knowledge. Mr. Ruiz does not identify in the declaration when he is speaking from personal knowledge and when he is merely stating something which he read in the Carrington books and records.[6] Mr. Ruiz does testify that when

_____

[6]/ For this summary judgment motion there is no dispute as to the evidence submitted to the court. It appears that a significant portion of Mr. Ruiz's testimony is merely reciting what he read from the Carrington file. Further, on its face, Mr. Ruiz appears to be testifying under penalty of perjury that he has personal knowledge of the execution of documents by the Plaintiff-Debtors with Fremont Financial well prior to any involvement that Carrington had with the Plaintiff-Debtors. Additionally, he provides a legal opinion in paragraph 8 of the declaration concerning Section 6 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605. Nothing in the declaration indicates that Mr. Ruiz has a legal background or training, or any evidence that he is competent to provide

16

payments were received by Carrington from the Trustee, Carrington believed that the portion of the payments in excess of its claim on the Fremont First Note should be applied to the Second Fremont Note, which the court had determined to be a fully unsecured claim. Mr. Ruiz's testimony concludes with a statement that the application of the payments has been corrected and are all applied to the Fremont First Note.[7]

## ANALYSIS

A motion for summary judgment is governed by Federal Rule of Civil Procedure 56 as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056. Summary judgment is granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

A party seeking summary judgment must show (1) the apparent absence of any genuine dispute of material fact and (2) movant's entitlement to judgment as a matter of law on the basis of the undisputed facts. 11 JAMES WM. MOORE, FEDERAL PRACTICE § 56.13[1] (3rd ed. 2010). "The initial burden of showing the absence of a

---

testimony as to the legal effect of RESPA.

These broad statements and apparent gratuitous legal testimony are more indicative of a declaration signed without any substantive assistance in the preparation of or a careful review by the declarant. The questions concerning the quality of the testimony are heightened when this appears to be a stock declaration in which someone has handwritten the witnesses position with Carrington, rather than the attorney preparing the declaration taking several additional minutes to obtain that information from Mr. Ruiz by a phone call or email.

[7]/ As was addressed during oral argument, this testimony does not state that the payments received by Fremont have been the pre-petition arrearage.

17

1  material factual issue is on the moving party.  Once that burden is

2  met, the opposing party must come forward with specific facts, and

3  not allegations, to show a genuine factual issue remains for

4  trial."  *DeHorney v. Bank of America N.T.&S.A.*, 879 F.2d 459, 464

5  (9th Cir. 1989); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

6  323-324 (1986).  If the movant fails to show that he or she is

7  entitled to judgment as a matter of law based on the undisputed

8  facts, it is irrelevant what the nonmovant does or does not do; the

9  movant is not entitled to summary judgment.  *Anchorage Assocs. v.*

10 *Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990).

11 **Second and Third Causes of Action**
   **Violation of the Automatic Stay, 11 U.S.C. § 362(a),(k)**

12

13     The Plaintiff-Debtors assert that the conduct of Carrington in

14 increasing the post-petition payments violated the automatic stay

15 by recovering payment of pre-petition escrow shortage outside of

16 the confirmed Chapter 13 plan.  The Plaintiff-Debtors assert that

17 Carrington has asserted its claim in this case and sought to obtain

18 payment on the obligation evidenced by the First Fremont Note.

19 Specifically, the First Amended Complaint alleges that:

20     1.   Carrington generated one post-petition mortgage payment
            change in this case based on post-petition escrow
21           analyses.

22     2.   Carrington issued the post-petition mortgage payment
            change for the purpose of collecting pre-petition claims.
23

24     3.   Carrington purposefully utilized the Chapter 13
            procedures and rules, the Chapter 13 Trustee, and local
            rules to put pressure on the Plaintiff-Debtors to pay the
25           increased post-petition loan payments.

26     4.   Carrington willfully and intentionally sought to obtain
            payment on pre-petition claims through increased post-
27           petition Note payments.

28     5.   Carrington's use of post-petition notices of Note payment

                                    18

increases was intentional, with knowledge of the automatic stay, systematic, and to collect pre-petition amounts owed by Plaintiff-Debtors.

6.  Carrington knew that when the Chapter 13 Trustee received the notices of post-petition increased Note payments, the Trustee would collect the increased amount from the Plaintiff-Debtors.

7.  Carrington increased the post-petition Note payments with the knowledge that it was improper and would not be permitted by the court unless it was so provided in a confirmed Chapter 13 plan or pursuant to an order granting relief from the automatic stay.

Carrington argues that a RESPA Notice issued post-petition and a creditor's passive receipt of payments from the Chapter 13 Trustee could not violate the automatic stay as a matter of law. Carrington places great reliance on the Bankruptcy Appellate Panel decision in *Zotow v. Johnson (In re Zotow)*, 432 B.R. 252 (B.A.P. 9th Cir. 2010). In seeking summary judgment, Carrington asserts that a single RESPA Escrow Account Disclosure Statement, as a matter of law, is merely informational and not an attempt to collect a debt. In *Zotow*, BAC Home Loan Servicing, LP ("BAC") sent one post-petition notice to the debtors showing an increase in the post-petition monthly mortgage payment. It was further alleged that BAC received several payments from the Chapter 13 trustee at the increased amount. The Bankruptcy Appellate Panel was reviewing a decision of the bankruptcy court after an evidentiary hearing on an objection to claim, not on a motion to dismiss or summary judgment motion.

The *Zotow* court first considered the decision of the Fifth Circuit Court of Appeals in *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348 (5th Cir. 2008). In *Campbell*, the Court of Appeals concluded that the automatic stay precluded Countrywide

from attempting to obtain payment on pre-petition arrearage other than as permitted by the Bankruptcy Code. The obligation owing for a pre-petition arrearage, even if the claim is subject to the anti-modification provision of 11 U.S.C. § 1325(b)(2), is a pre-petition claim subject to the automatic stay provisions of 11 U.S.C. § 362(a). *Campbell*, 545 F.3d at 354. However, the only conduct by Countrywide in *Campbell* was filing a proof of claim stating the higher installment amount. Filing a proof of claim, even one which grossly overstates the claim, is not a violation of the automatic stay. *Id.* at 356.

The Third Circuit Court of Appeals has also addressed this issue, again with Countrywide attempting to increase post-petition installments to recover a pre-petition arrearage. After that bankruptcy case was filed, Countrywide issued the debtors a revised escrow analysis and demand for payment. The Third Circuit Court of Appeals concluded that including the pre-petition arrearage in the post-petition installment was an attempt to obtain payment on a pre-petition claim which was governed by the Bankruptcy Code.

Though Countrywide was entitled to be paid this portion of its claim, it could not violate the automatic stay in attempting to obtain payment of its pre-petition arrearage. The matter was remanded to the trial court to determine if the violation was willful to support an award of damages pursuant to 11 U.S.C. § 362(k). *In re Rodriguez*, 629 F.3d. 136, 143-144 (3rd Cir. 2010). This decision by the Third Circuit Court of Appeals was issued after the Bankruptcy Appellate Panel issued its ruling in *Zotow*.

The Panel in *Zotow* considered the scope of the automatic stay with respect to communications relating to pre-petition claims.

Not every communication by a creditor is prohibited. Rather, prohibited communications are those which, based on direct or circumstantial evidence, are geared to collection of pre-petition debt, and which are accompanied by coercion or harassment. *Zotow*, 432 B.R. at 259. Relying on *Morgan Guar. Trust Co. Of N.Y. v. Am. Sav. And Loan Ass'n*, 804 F.2d 1487, 1491 (9th Cir. 1986), the Bankruptcy Appellate Panel concluded that a mere request for payment and an informational statement are permissible communications which do not violate the automatic stay. *Zotow*, 432 B.R. at 259. The Bankruptcy Appellate Panel also recognized that, "Whether a communication is a permissible or prohibited one is a fact-driven inquiry which makes any bright line test unworkable." *Id.* at 258.

In *Morgan Guar. Trust Co.*, the Ninth Circuit addressed the issue of whether the presentment of a note issued by Johns Manville violated the automatic stay.[8] Because the automatic stay seeks to ensure the orderly administration of the debtor's estate, provide a breathing spell for the debtor, maintain the status quo, and prevent harassment of a debtor by sophisticated creditors, a request for payment (as with the presentment of a negotiable instrument) does not violate the automatic stay unless it is accompanied by coercion or harassment, such as immediately or potentially threatening the debtor's possession of property. *Morgan*, 804 F.2d at 1491. Examples of communications cited by the Ninth Circuit violating the automatic stay included: (1) notice of

---

[8]/ This predated the amendment to 11 U.S.C. § 362(b)(10) which exempts presentment of a negotiable instrument from the automatic stay.

intent to terminate lease, (2) notice of intent to terminate franchise, (3) notice of medical clinic refusal to provide future medical services because of refusal to pay for prior services, (4) letter informing debtor that an attorney had been hired to collect a delinquent account, (5) college refusing to release transcripts as a method to force payment, and (6) a creditor who made repeated visits and telephone calls to a debtor. *Id.* Examples of communications not violating the automatic stay included: (1) letter sent to debtor's attorney that a credit union would not have further business dealings with the debtor unless debt was reaffirmed, and (2) communications setting out the basis of the claim (informal proof of claim). *Id.*

The *Zotow* court concluded that the stay had not been violated because BAC sent a single notice, which did not request payment. The one notice communicated the information obtained in the recent escrow analysis computed by BAC. The record established at the evidentiary hearing revealed no indication that BAC attempted to collect the pre-petition arrearage outside the bankruptcy court. The Panel placed significant weight on there being only a single notice sent to the debtor. Given that there was one notice, no other action taken to obtain payment, and undisputed facts which did not constitute harassment or coercion, the Panel concluded that the single notice did not violate the automatic stay.

The present adversary proceeding is nearly identical to *Zotow*. As in *Zotow*, Carrington sent a single post-petition notice of a change in the mortgage payment to the Chapter 13 Trustee who then notified the Plaintiff-Debtors of a change in the mortgage payment and the resulting change in their plan payment. There is no

evidence Carrington engaged in a pattern of post-petition conduct in an attempt to harass the Plaintiff-Debtors. Rather, Carrington simply conducted an escrow analysis pursuant to RESPA and sent out a notice that the analysis resulted in a change in the payment. Though the Plaintiff-Debtors make much of Carrington's misapplication of some post-petition payments meant for the escrow shortfall, Carrington represents that it has corrected the error. However, the court has not been presented with evidence of how the monies have been "correctly" applied by Carrington.

The evidence before the court does not support the other allegations of the Plaintiff-Debtors that providing this one notice of a change in the post-petition monthly payments due under the Fremont First Note was part of a larger campaign to harass debtors. From oral argument presented, it is clear that the "larger campaign" is the contention that lenders in general routinely compute post-petition payments in Chapter 13 cases using the RESPA formula without regard to the pre-petition arrearage being paid through the Chapter 13 plan. However, there is no evidence to support Plaintiff-Debtors' contention that they were harassed sufficiently such that one communication of a post-petition increase in monthly loan payments constituted a violation of the automatic stay in this case.

The sending of the single post-petition notice of a change in the ongoing mortgage payment in this case does not violate the automatic stay, even though it includes payments of what are alleged to be pre-petition escrow arrarage. Based on the undisputed facts, Carrington is entitled to judgment in its favor

on the second and third causes of action.[9]

The court also rejects Plaintiff-Debtors apparent contention that they have no obligation to address disputes concerning the proper post-petition payment amounts to be made for Class 1 or Class 2 Claims, or the correct determination of a creditors pre-petition arrearage to be paid through the Chapter 13 Plan. Plaintiff-Debtors appear to have adopted a strategy that rather than addressing such issues as part of confirming or enforcing their Chapter 13 plan, they can elect instead to sue the creditor alleging a violation of the automatic stay and seek monetary recovery. Debtors have the option of choosing to file a Chapter 13 reorganization or Chapter 7 liquidation. Choosing a reorganization necessarily entails much more significant emotional, financial, and time commitments than merely filing a Chapter 7 and proceeding directly to a fresh start. However, a properly prosecuted Chapter 13 case can yield a significantly advantageous economic benefit for debtors. In many cases debtors strip junior liens from their residence and cure the arrearage on the senior lien, thereby saving their home and realizing future appreciation without paying the junior liens.

In this setting, it is not unreasonable for a Chapter 13 debtor, advancing the interests of the estate and the debtor, to address a pre-petition claim dispute consisting of the correct computation of the post-petition payment. This includes

---

[9]/ The Third Cause of Action asserts a "violation" of 11 U.S.C. § 362(k). Subparagraph (k) is a remedies provision for violation of the other provisions of § 362. The court reads the Second and Third Causes of Action as one claim for statutory damages under § 362(k), as opposed to a request for sanctions under 11 U.S.C. § 105 and the inherent powers of this court.

determining the correct amount of the pre-petition arrearage to be paid through the plan.  A debtor has many different tools in his or her arsenal, including filing a claim for the creditor, objecting to a claim, obtaining a determination of a plan term as part of a confirmation hearing, supplemental proceedings in enforcement of a plan, and a declaratory relief action.  To the extent that there exists a contractual attorneys' fees provision, presumably a prevailing debtor would seek to recover  attorneys' fees and costs for the benefit of the estate and other creditors.

Though creditors' counsel may argue that the present type of situation arises because a debtor fails to communicate with the creditor, the court is cognizant of the realities of modern home loan debt servicing.  The persons computing the current (post-petition) mortgage payments are separate from the bankruptcy group and the attorney (if any) attempting to represent the creditor in the bankruptcy case.  Whether because of the volume of defaulted home loans or a conscious management decision, a thoughtful response to a debtor's dispute of a mortgage payment or arrearage calculation often does not occur until the creditor is forced to a court hearing.

The ruling on this issue is limited to the facts in this case - one notice of the recomputed post-petition installment payment amount.  The Plaintiff-Debtors have offered no evidence of harassment or abuse coupled with the single notice of the increased post-petition mortgage payment.  This decision on the alleged violation of the automatic stay is without prejudice  to any other rights of the Plaintiff-Debtors or obligations of Carrington.  In addition to the Plaintiff-Debtors determining the proper judicial

proceeding to address a disagreement as to the amount of the post-petition monthly mortgage payment (whether confirmation hearing, objection to claim, motion to enforce term of confirmed plan, or other proceeding), the conduct of a creditor in filing a claim and pleadings in this case are governed by 18 U.S.C. §§ 152 and 3571, Fed. R. Bankr. P. 9011, and the inherent power control proceedings in this court.  Further, conduct beyond the bankruptcy proceeding remains subject to various federal and state consumer protection laws, as well as common law claims and other applicable statues.

## Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(a)

The Plaintiff-Debtors allege that Carrington failed to comply with the Real Estate Settlement Procedures Act (RESPA) by not sending a required notice of the transfer of the servicing of the first loan. *See* 12 U.S.C. § 2605(a).[10]  The statute requires that both the transferor and transferee of the servicing provide borrowers with notice of the transfer. *Id.* at § 2605(b)-(c).  As the transferee, Carrington was obligated to provide the required notice within fifteen days of the effective date of the transfer. *Id.* at § 2605(c)(2)(A).

The Plaintiff-Debtors claim that they never received these notices from either Carrington or Fremont, the transferor. Carrington, however, provides evidence that it obtained the servicing rights for the first loan on April 1, 2008, and sent a notice to the Plaintiff-Debtors regarding the transfer on or about

---

[10]/ The complaint refers to 12 U.S.C. § 2604, though Carrington presumes that the Plaintiff-Debtors meant 12 U.S.C. § 2605.

that same date. Decl. of Mike Ruiz 2:24-28.  A copy of this notice has been introduced as Exhibit D by Carrington.

The Plaintiff-Debtors offer no testimony to counter this evidence.   From the undisputed evidence before the court, Carrington sent a notice concerning the transfer of servicing to the Debtors.  The mere assertion that the Plaintiff-Debtors did not receive the required notice is not sufficient in light of Carrington's evidence that the notice was sent.  *See Celotex*, 477 U.S. at 323-324.

Uncontroverted evidence having been submitted as to the notice provided by Carrington, the court continues with a review thereof. The required contents of the notice given by the transferee are the same as required in the notice given by the transferor. 12 U.S.C. § 2605(c)(3).

> (3)  Contents of notice. The notice required under paragraph (1) shall include the following information:
>
> (A)  The effective date of transfer of the servicing described in such paragraph.
>
> (B)  The name, address, and toll free or collect call telephone number of the transferee servicer.
>
> (C)  A toll free or collect call telephone number for (i) an individual employed by the transferor servicer, or (ii) the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.
>
> (D)  The name and toll free or collect call telephone number for (i) an individual employed by the transferee servicer, or (ii) the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.
>
> (E)  The date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments.

1

2          (F)  Any information concerning the effect the
   transfer may have, if any, on the terms of or the
3   continued availability of mortgage life or disability
   insurance or any other type of optional insurance and
4   what action, if any, the borrower must take to maintain
   coverage.

5          (G)  A statement that the assignment, sale, or
   transfer of the servicing of the mortgage loan does not
6   affect any term or condition of the security instruments
   other than terms directly related to the servicing of
7   such loan.

8   26 U.S.C. § 2605(b)(3).

9        The notice required to be given by Carrington was required to

10   be given within fifteen days of the transfer of the servicing

11   rights.  26 U.S.C. § 2605(c)(2).  In his declaration, Michael Ruiz

12   testifies under penalty of perjury that the notice was provided

13   April 1, 2008. Mr. Ruiz further testifies under penalty of perjury

14   that a copy of the notice of service transfer is filed as Exhibit D

15   in support of the motion for summary judgment.  Exhibit D states

16   that   it   was   executed   by   William   Malcolm   as   the

17   Transferee/Transferee's Agent on May 2, 2008.  This copy of the

18   notice of transfer was then filed with the court on May 2, 2008.

19   The court accepts the document filed with the court to be a true

20   and  accurate  statement  of  the  information  provided  therein,

21   including the date it was executed by Mr. Malcolm.  Based on the

22   totality of Mr. Ruiz's testimony, it is undisputed that Exhibit D

23   is the notice of transfer of servicing rights to Carrington which

24   was  provided  to  the  Plaintiff-Debtors  and  that  the  notice  of

25   servicing rights was not executed by Mr. Malcolm until May 2, 2008.

26   Based on this undisputed evidence submitted by Carrington, the

27   court finds that the notice of transfer of servicing rights was not

28   created until May 2, 2008 and could not be provided to the

Plaintiff-Debtors until on or after May 2, 2008.

In reviewing the contents of the notice of transfer of servicing rights to Carrington, Exhibit D, based on the uncontroverted and undisputed evidence, the court determines that the notice does not comply with 26 U.S.C. §2605(c)(3). Specifically it (1) does not state the effective date of the transfer; (2)does not identify a toll free or collect call telephone number for (i) an individual employed by the transferor servicer, or (ii) the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing; (3) does not state (i) the name of an individual employed by the transferee servicer, or (ii) the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing; and (4) does not state the date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments. Each of these are separate and independent violations of 26 U.S.C. § 2605(c)(3).

The court may enter summary judgment in a case *sua sponte* or in response to a summary judgment motion by one party if there is no bona fide dispute to the facts underlying that cause of action. *See Cool Fuel, Inc. v. Connett*, 685 F.3d. 309, 311-312 (9th Cir. 1982), holding that no cross-motion for summary judgment is required because court may grant summary judgment *sua sponte* if no genuine issue of material fact exists. In the opposition to summary judgment, the Plaintiff-Debtors expressly requested entry

of summary judgment in favor of the Plaintiff-Debtors for violation of the automatic stay, violation of RESPA, and civil conspiracy. Dckt. 40.

Given that the undisputed evidence establishes that Carrington failed to provide the statutorily required notice, the court considers the balance of 26 U.S.C. § 2605(f) which provides for damages which can be awarded the consumer.

> (f) Damages and costs. Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
>> (1)  Individuals. In the case of any action by an individual, an amount equal to the sum of
>>
>>> (A) any actual damages to the borrower as a result of the failure; and
>>>
>>> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $ 1,000.
>>
>> (2)  Class actions. In the case of a class action, an amount equal to the sum of
>>
>>> (A)  any actual damages to each of the borrowers in the class as a result of the failure; and
>>>
>>> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not greater than $ 1,000 for each member of the class, except that the total amount of damages under this subparagraph in any class action may not exceed the lesser of
>>>> (i) $ 500,000; or
>>>>
>>>> (ii) 1 percent of the net worth of the servicer.
>>
>> (3)  Costs. In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be

reasonable under the circumstances.

> (4) Nonliability. A transferor or transferee servicer shall not be liable under this subsection for any failure to comply with any requirement under this section if, within 60 days after discovering an error (whether pursuant to a final written examination report or the servicer's own procedures) and before the commencement of an action under this subsection and the receipt of written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid.

Upon the court determining that a violation of the notice requirement has occurred, in an individual case the plaintiff shall recover any actual damages, and, in addition to any actual damages, in the case of a pattern or practice of non-compliance, statutory damages not to exceed $1,000.00. In addition to the actual or statutory damages, in a successful action the plaintiff shall also be awarded the costs of the action, together with any attorneys fees incurred in connection with the action as the court determines reasonable under the circumstances.   26 U.S.C. § 2605(f)(4) also creates a safe harbor provision allowing a servicer to correct a defective notice.

Though the court is able to determine sufficient facts in the context of this summary judgment motion to determine that the notice of transfer of servicing rights required under RESPA by Carrington was not given in the time period prescribed by RESPA and that the notice of transfer of servicing rights did not contain the information required by RESPA, the court has not been presented with evidence sufficient to make a determination on actual or

1  statutory damages in this case.

2      Though not entering a summary judgment for Plaintiff-Debtors,

3  Fed. R. Civ. P. 56(g) authorizes the court to enter an order

4  determining any material facts which are not in genuine dispute.

5  Carrington has requested in its motion that the court make such

6  determinations if summary judgment is not granted as to a cause of

7  action.  The court determines the following material facts not to

8  be in genuine dispute in this Adversary Proceeding:

9      1.   On June 21, 2005, Plaintiff-Debtors Executed Note in
       favor of Fremont Investment & Loan.  ("Fremont First Note").
10     Michael Ruiz Declaration, 4, Exhibit A, Dckt. 38.

11     2.   The Fremont First Note was secured by a Deed of Trust
       encumbering real property commonly known as 4231 North County
12     Drive, Antelope, California, granted by the Plaintiff-
       Debtors.  Michael Ruiz Declaration, ¶5, Exhibit B, Dckt. 38.
13
       3.   On August 1, 2007, Plaintiff-Debtors modified the Fremont
14     First Note to provide for monthly payments of $1,656.13.
       Michael Ruiz Declaration, ¶6.
15
       4.   On January 3, 2008, Plaintiff-Debtors filed bankruptcy
16     case no. 08-20111.  Petition, Dckt. 1, Case No. 08-20111.

17     5.   On January 10, 2008 Fremont was served with Notice of the
       Bankruptcy Case.  Dckt. 10, Case No. 08-20111.
18
       6.   Plaintiff-Debtors Chapter 13 Plan provided for $1,656.13
19     post-petition payments and payments to cure pre-petition
       arrearage of $11,600.00.   Michael Ruiz Declaration, ¶10;
20     Chapter 13 Plan, Dckt. 53, Case No. 08-20111.

21     7.   On February 27, 2008 Fremont Investment filed a proof of
       claim listing $2,126.82 pre-petition arrearage. Proof of Claim
22     No. 9, Official Claims Registry, Case No.08-20111.

23     8.   The proof of claim did not list $12,105.11 in
       pre-petition advances made by Fremont for property taxes.
24     Michael Ruiz Declaration 17.  Proof of Claim No. 9, Official
       Claims Registry, Case No. 08-20111, filed by Fremont
25     Investment.

26     9.   On April 1, 2008 Carrington acquired the servicing rights
       for the Fremont First Note.  Michael Ruiz Declaration, ¶7.
27
       10.  At the time of the April 1, 2008 service transfer to
28     Carrington, there was a $12,106.11 negative escrow balance on

32

the Fremont First Note.  Michael Ruiz Declaration, ¶10.

11.  The notice of transfer of servicing rights to Carrington required to be given the Plaintiff-Debtors pursuant to RESPA is the Transfer of Claim Other Than Security dated May 2, 2011, and executed under penalty of perjury by William Malcolm as the Transferee/Transferee's Agent.  Michael Ruiz Declaration, ¶8.  Exhibit D., Dckt. 36.

12.  On May 2, 2008 Carrington filed a notice of transfer of Claim with the bankruptcy court.  Michael Ruiz Declaration, ¶9.

13.  On May 5, 2008 the Sacramento County Tax Collector filed a proof of claim in the amount of $3,932.86 for 2008 estimated property taxes.  Proof of Claim No. 22, Official Claims Registry, Case No. 08-20111.

14.  On May 9, 2008 Plaintiff-Debtors' First Amended Chapter 13 Plan was confirmed.  Dckt. 101, Case No. 08-20111.

15.  The Chapter 13 Trustee disbursed monthly payments of $1,656.13 to Carrington during the period February 28, 2008 through November 30, 2009.  Michael Ruiz Declaration, ¶10.

16.  On September 16, 2008 Plaintiff-Debtors filed a First Modified Chapter 13 Plan listing two Class 1 secured claims for Carrington.  The first claim provides for a monthly contract installment of $1,656.13 and a monthly distribution of $25.00 on a pre-petition arrearage of $2,126.82.  The second Carrington claim is for an $8,051.42 arrearage to be paid with a monthly distribution of $153.00.  Exhibit F, Dckt. 36. Case No. 08-20111, Dckt. 121.

17.  On November 28, 2008 Carrington began applying some payments from the Chapter 13 Trustee to the Fremont Second Note secured by a second trust deed.  Michael Ruiz Declaration, ¶12.

18.  On October 9, 2009 Carrington generated Annual Escrow Account Disclosure Statement - Projections.  Michael Ruiz Declaration, ¶13.

19.  The October 9, 2009 Disclosure Statement-Projections provided notice that the post-petition mortgage payments increasing from $1,656.13 to $1,904.66.  Michael Ruiz Declaration, ¶14.

20.  The October 9, 2009 Disclosure Statement - Projections states "this statement tells you of any changes in your mortgage payment" Michael Ruiz Declaration, ¶14.

21.  During the period from December 31, 2008 through June 20, 2010, Carrington received monthly payments from the Chapter 13 Trustee in the amount of $1,904.66.  This increased payment

was the amount stated in the Annual Escrow Account Disclosure Statement which it sent to the Chapter 13 Trustee and the Plaintiff-Debtors.    Michael Ruiz Declaration, ¶¶ 15, 14.

22.    Additional payments made by the Chapter 13 Trustee for the pre-petition arrearage based on the proof of claim filed by the Plaintiff-Debtors for Carrington were misapplied to Fremont Second Note.  Michael Ruiz Declaration, ¶12.

23.    On January 7, 2010 Plaintiff-Debtors sent Carrington a Qualified Written Request under RESPA.  Michael Ruiz Declaration, ¶16.

24.    On July 13, 2010, Carrington responded to the Plaintiff-Debtors' January 7, 2010, Qualified Written Request, advising Plaintiff-Debtors that any payments misapplied to Fremont Second Note had been re-applied to Fremont First Note. Michael Ruiz  Declaration, ¶18.

25.    The notice of transfer of servicing to Carrington was sent by Carrington.    Declaration of Michael Ruiz, ¶8. Dckt. 34; Carrington Statement of Undisputed Facts, ¶10, Dckt. 33.

26.    The notice of transfer of servicing to Carrington is the document filed by Carrington as Exhibit D, Dckt. 36. Declaration of Michael Ruiz, ¶8, Dckt. 34.  Exhibit D is dated May 2, 2008, and executed by William G. Malcolm as the Transferee/Transferee's Agent.

27.    The notice of transfer of servicing to Carrington was not sent to the Plaintiff-Debtors until on or after the May 2, 2008 date of the notice.  Exhibit D, Dckt 36.

28.    Carrington acquired the servicing rights on the Fremont first note, for which a notice of transfer of servicing rights was required under 26 U.S.C. § 2605(c)(3), on April 1, 2008. Declaration of Michael Ruiz, ¶8, Dckt. 34.  Carrington Statement of Undisputed Facts, ¶9, Dckt. 33.

29.    The notice of transfer of servicing rights was not given by Carrington within 15 days of the April 1, 2008 transfer of servicing rights.  Declaration of Michael Ruiz, ¶8, Dckt. 34. Carrington Statement of Undisputed Facts, ¶9, Dckt. 33. Exhibit D, Dckt 36.  The court takes judicial notice of the fact that May 2, 2008 is thirty-two days after April 1, 2008.

30.    The notice of transfer of servicing rights given by Carrington  does not state the effective date of the transfer. Exhibit D, Dckt ·36.

31.    The notice of transfer of servicing rights given by Carrington  does not identify a toll free or collect call telephone number for (i) an individual employed by the transferor servicer, or (ii) the department of the transferor

servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.   Exhibit D, Dckt 36.

32.   The notice of transfer of servicing rights given by Carrington  does not state the name of an individual employed by the transferee servicer, or (ii) the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing. Exhibit D, Dckt 36.

33.   The notice of transfer of servicing rights given by Carrington  does not state the date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments.   Exhibit D, Dckt 36.

These facts are determined for all claims, all defenses, and for all other purposes in this Adversary Proceeding.

### Civil Conspiracy

To establish a civil conspiracy in California one must show that defendants jointly engaged in a tort.   There is no separate civil action for conspiracy to commit a tort without there being an actual wrongful act committed.  *Favila v. Katten Muchin Rosenman, LLP*, 188 Cal. App. 4th 189, 206 (2010); *see also* 5 WITKIN SUMMARY OF CALIFORNIA LAW TORTS, §45.  The effect of the "conspiracy" is that each of the defendants involved are individually liable.     Though incorporating the general allegation paragraphs and the RESPA cause of action allegations, the general allegations of a conspiracy are only nonspecifically stated as against unidentified Defendants.

The California District Court of Appeal in *Black v. Bank of America*, 30 Cal. App. 4th 1 (1994) conducted the review of a conspiracy claim and the proper basis for such a claim when the parties involved were a corporation and the agents or employees of the corporation.    The *Black* Court concluded that it is well

1 | established California law that employees or agents of a
2 | corporation cannot conspire with their principal or employer when
3 | acting in their official capacity. In *Gruenberg v. Aetna Ins. Co*,
4 | 9 Cal. 3d 566 (1973), the California Supreme Court concluded that
5 | an insured could not state a conspiracy claim against his insurance
6 | company and a separate insurance adjusting firm, a separate law
7 | firm, and employees of the two separate firms because only the
8 | insurance company had a duty of good faith and fair dealing with
9 | the insured. The two separate firms were not a party to the
10 | insurance contract and did not have such a duty to the plaintiff.
11 | In its *Doctors' Co. v. Superior Court* decision, the California
12 | Supreme Court held that an attorney and an expert witness employed
13 | by an insurance company could not be held liable for conspiring to
14 | violate the company's statutory duties, again because the statutory
15 | duties were owed only by the insurance company. 49 Cal. 3d 39
16 | (1989).

17 | In *Younan v. Equifax Inc.*, 111 Cal. App. 3d 39 (1980), the
18 | court rejected a conspiracy claim for constructive fraud alleged to
19 | be based on a breach of fiduciary duty owed by a disability
20 | insurer. The insurer's agents did not owe the plaintiff a
21 | fiduciary duty, and only the insurer itself owed the fiduciary
22 | duty. However, the court allowed stand a claim for conspiracy to
23 | commit actual fraud, since even the agents owed a duty to the
24 | plaintiff to "abstain from injuring the plaintiff through express
25 | misrepresentations, independent of the insurer's implied covenant
26 | of good faith and fair dealing."

27 | This issue is further addressed by the Supreme Court in
28 | *Applied Equipment Corp. v. Litton Saudi Arabia Ltd*, 7 Cal. 4th 503

(1994).  The Supreme Court first distinguished between alleged
conspiracies arising out of tort claims and contract claims.  For
contract claims, there is no tort obligation for one contracting
party not to interfere with the performance of the contract.  There
is merely a contractual obligation to perform as promised.
Therefore, a person who is not a party to a contract cannot be
bootstrapped into a conspiracy tort.

> For there to be a civil conspiracy there must be
>
>> [t]he formation and operation of the conspiracy and
>> damage resulting to plaintiff from an act or acts done in
>> furtherance of the common design . . . In such an action
>> the major significance of the conspiracy lies in the fact
>> that it renders each participant in the wrongful act
>> responsible as a joint tortfeasor for all damages ensuing
>> from the wrong, irrespective of whether or not he was a
>> direct actor and regardless of the degree of his
>> activity.

*Id.* at 512.  However, each of the actions must have a duty to the
person alleging a conspiracy.  The conspiracy is to have a co-
conspirator do the act that breaches everyone's respective duties.

In this case, all of the operative allegations have been made
against Carrington for the remaining claims in this case for which
the non-specific conspiracy is alleged.  The Plaintiff-Debtors only
make boilerplate allegations that unnamed Defendants "conspired"
for the "recouping of pre-petition claims from post-petition estate
property resulting in systematic injury to debtors."  (Dckt. 1 at
14).  Further, there is no allegation as to what duties, if any,
that these unnamed Defendants owe to the Plaintiff-Debtors and the
damages caused to them by the breach of those duties.

The Plaintiff-Debtors offer no evidence in support of this
claim either.  They admit that they possess no information about
the relationship between Fremont and Carrington.  They allege that

another defendant, William Malcolm, has not yet acknowledged what personal knowledge he has about the transfer of servicing from Fremont to Carrington. They further allege that, based on "information and belief[,] . . . defendants use a software technology which fails to provide that when a proof of claim is generated, the escrow analysis should differentiate between pre and post petition [sic] escrow advances . . . ." Plaintiff-Debtors' P&A 23:17-20.

This argument fails for several reasons. First, it is wholly unsupported by any evidence in the record as to these Defendants. *See Celotex*, 477 U.S. at 323-324.

Second, the claim is based wholly on the alleged violation of the automatic stay. The court, however, has determined that the sending of the post-petition notice in this case was not a violation of the automatic stay. This undercuts the Plaintiff-Debtors' entire theory for liability: since there was no unlawful act there could not have been a civil conspiracy to commit the unlawful act.

Third, there are no alleged duties or evidence of the breach of any duties of the non-Carrington defendants to the Plaintiff-Debtors. The apparent contention is that various unidentified defendants should be liable because Carrington is alleged to have breached its duty.

Because there are no disputed or undisputed facts which support the allegation of a civil conspiracy by Carrington, the motion for summary judgment is granted.

### CONCLUSION

The Plaintiff-Debtors failed to meet their burden to offer

1  evidence to rebut that presented by Carrington.  The undisputed
2  facts in this adversary proceeding establish that Carrington did
3  not violate the automatic stay through the sending of a single,
4  post-petition notice of change in the ongoing mortgage payment.
5  Further, the uncontroverted evidence shows that the required RESPA
6  notice of a change in servicing was sent to the Plaintiff-Debtors.
7  Finally, as their civil conspiracy claim depends upon the violation
8  of  the  automatic  stay,  the  undisputed  facts  show  that  the
9  Plaintiff-Debtors cannot prove a key element of the claim: the
10 unlawful act.  Carrington is entitled to summary judgment in its
11 favor on the second and third (violation of automatic stay and
12 § 362(k)), and fifth (civil conspiracy) causes of action.  Judgment
13 on the second and third causes of action as to Carrington shall be
14 entered at the time of and as part of a single judgment regarding
15 Carrington.  The court denies the Motion for Summary Judgment in
16 favor of Carrington on the fourth (RESPA) cause of action.
17 Pursuant to Fed. R. Civ. P. 56(g) and Fed. R. Bankr. P. 7056 the
18 court determines the material facts for which there are no genuine
19 disputes as set forth in this decision.

20     The court shall issue a separate order granting the Summary
21 Judgment Motion in part, denying the Motion in part, and making the
22 determinations of material facts not in genuine dispute.

23     This Memorandum Opinion and Decision constitutes the court's
24 findings of fact and conclusions of law pursuant to Fed. R. Civ. P.
25 52 and Fed, R. Bankr. P. 7052. The court shall issue a separate
26 order consistent with this ruling.

27 Dated: June 23 , 2011

28

RONALD H. SARGIS, Judge
United States Bankruptcy Court

This document does not constitute a certificate of service. The parties listed below will be served a separate copy of the attached document(s).

Peter Macaluso
7311 Greenhaven Dr #100
Sacramento, CA 95831

Ellen Cha
4375 Jutland Dr
San Diego, CA 92177

Mark Wolff
8861 Williamson Dr #30
Elk Grove, CA 95624

Patricia Braddock
4213 N Country Dr
Antelope, CA 95843

Richard Braddock
4213 N Country Dr
Antelope, CA 95843

Lawrence Loheit
PO Box 1858
Sacramento, CA 95812-1858

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814